Good morning. May it please the court, David Donahue for appellants. With me today is my partner Matthew Penfield. You came a long way. We're anxious to hear your argument. We did come a long way. The district court's decision granting ABN's motion to vacate on the basis of evident partiality should be reversed for three reasons. Number one, the legal standard applied by the district court was incorrect. Number two, the undisclosed relationships themselves are insufficient to create a reasonable impression of partiality. And three, by failing to inquire about the scope of the disclosed prior relationship between AIG and the arbitrator's firm, ABN waived its ability to challenge the arbitration award on that basis after the award came out. Sounds like we've got a collision of sorts here between the duty of an arbiter to disclose things that may potentially impinge upon bias or implied bias, etc., and on the other side, the duty of a claimant in an arbitration proceeding to inquire, perhaps inquire further. Tell us how we resolve that. Well, certainly the Ninth Circuit in the Durhammock case announced to her a clear rule that, you know, if a party has constructive knowledge or knowledge of a potential conflict and fails to object to it, then they waive it. And I think the reason behind that is clear because when you have evident partiality as a standard for a potential vacator, you don't want to create a situation that encourages a losing party to arbitration to engage in a post-arbitration investigation in just the hopes of coming up with some kind of relationship that they can then turn around and claim evident partiality after the fact, when in fact what they're really complaining about is that they lost. And the arbiter in this case was a partner in a law firm, correct? That's correct. And law firms, big or small, have to be very careful about conflicts of interest. Absolutely. I can remember as a young lawyer writing a demand letter to an individual, the client who came in to see me said, Odie, money, and the response I got back was, you need to talk with your partner down the hall because he wrote the agreement. But there are serious consequences from not having complete methods of screening off potential conflicts. That's true. Yet there were some things. I understand your position is that there were some undisclosed things that are, frankly, of no moment. But there were some undisclosed things. Like this particular arbiter, she had been selected as a neutral by AIG, right? Well, the ‑‑ In the past. Well, the firm had ‑‑ the firm itself was on a list of preapproved neutrals but had never actually been selected. Does it matter any distinction between the firm and an individual partner? I assume she was a partner. Well, I think that there is an important distinction. I mean, when you go back to the example you gave, you know, in a normal conflict of interest issue when it comes to representing a client, obviously the rules of professional conduct operate so that you impute the prior representation of your partners to the lawyer. That's not quite the same analysis as is required here. Here, there has to be some culpable mental state on the part of the arbitrator in order to reach a conclusion that this arbitrator was reasonably, you know, partial or so you could create an impression of reasonable partiality. Tell me if I'm wrong about this. Was there ‑‑ one of the issues in the arbitration was AIG's responsibility for certain affiliated entities that worked with or were contracted by AIG, correct? The claim was that, you know, AIG was essentially an alter ego of the particular affiliates that were defendants. So the responsibility of AIG for the affiliates and underneath that, the affiliates' responsibility to AIG was an issue in the arbitration, correct? It was a claim. It was an issue in the arbitration. That's correct. Correct? That is correct. And one of the things she did not disclose was the fact that the firm had represented AIG affiliates in the past, correct? Well, she disclosed ‑‑ Am I wrong about that? Well, partially. Okay.  She disclosed, first and foremost, that AIG was a former client of the firm. And then she disclosed that American Home Assurance was also a client, which is an affiliate. And it turns out, after an exhaustive look, there were other affiliates who were clients of the firm, correct? That's correct. Okay. So, you know, the impact of that, I mean, it has to be still measured by some connection to the arbitrator herself. It's not the standard in the Ninth Circuit under Schmidt's new regency, and certainly not based on a plain reading of Section 10 of the FAA and in light of Hall Street, that this sort of constructive knowledge reaches the level of culpability that is necessary before an arbitration at work can be vacated. So there's still this lack of connection, and it's never been as simple as just simply imputing knowledge. So is it your client's position that at the beginning of an arbitration, if the arbiter gives an incomplete description of potential conflicts and it turns out that what would complete the disclosure is really of no moment, that's okay? Well, I don't think any court has held that there is a duty to disclose relationships or facts that are not of significance. And the courts just say that straight out. But it also sort of ignores the fact that her duty was, whether you look at how it's said by the AAA or if you look at Schmidt's or new regency, is she had a duty to perform a reasonable investigation. And she did that in this case. There's no evidence in the record that her firm's conflict process was structurally deficient in any way. It was appropriate for the size. And the fact that they couched the duty to investigate as a reasonable one contemplates the very situation here that an arbitrator could conduct a reasonable investigation, yet still have that investigation not lead to the discovery of all of the disclosable facts. And I think what the temptation here and what the district court did is basically use the — this constructive knowledge concept to gauge whether or not the investigation was reasonable, so that if the investigation disclosed all of the relationships, it was reasonable. If it did not, then it was deficient in some way. But that's not the standard, and it reads the word reasonable out of the equation. Suppose, hypothetically, that the owner of American Brokerage had come to the firm that the arbitrator was a partner in and said, I'd like to sue AIG. Can you tell me whether there would be any conflict, any conflicts of interest between your firm, AIG, or people that AIG works with? Would what happened in the arbitration have been a complete disclosure? Yeah, because at that standpoint, you know, the chronology of their representation is very important here, and it's almost — it can be certainly dispositive. By the time the arbitration occurred, the firm was in an adverse relationship with AIG, and its entities. She disclosed that there were four active matters that the firm had with American General Life in accident, and she said that there were several current actions that — where her firm was adverse to AIG. So in my hypothetical, she could have taken the case? Yeah, there's no conflict. And there would have been no requirement for her to make full disclosure? I don't — I mean, I don't think that there would be a requirement that she disclose that AIG is a former client based on the facts as they were at the time of the arbitration. You want to save some time for rebuttal? I would. Thank you. That'd be great. Thank you so much. Okay. You have a little over four minutes. Thanks for your argument, and thanks for coming so far. Ms. Elton, and you came from Nashville. Yes, Your Honor. Good morning. It's quite an honor for me to be here today. I'm here with Dewey Branstetter, who is also from Nashville, and then George King, who is an attorney here in California. Okay. May it please the Court, I'm here on behalf of Kuntai, an American brokerage network of Daly City, California. We're asking the Court to affirm the district court's vacator of this arbitration due to evident partiality arising from 25 undisclosed relationships between the arbitrator's law firm and the American General Companies. We would have a different — Counsel, I'm — sorry. Let me go ahead. We would have a different case, wouldn't we, if your client at the beginning of the arbitration had started asking questions and asked for a full and complete disclosure, wouldn't we? It's hard to know, Your Honor, but this Court in New Regency — Well, let me put it this way. If your client, which they didn't, had asked for a complete disclosure or asked more questions about their relationship with AIG and any of its affiliates and the arbiter had said, I'm aware of nothing else, it would be a different case, wouldn't it? It might be a different case, but going — Is there no obligation on your client's part to ask questions? Let me set the stage first before I answer that. So you're a party to a AAA arbitration, and you're told by AAA that the arbitrator is going to disclose past and present relationships with the parties, is going to disclose direct and indirect relationships with the parties, is going to disclose the connections to the parties and their subsidiaries and their affiliates. And then you're provided an oath by the arbitrator that says, I did all of those things that AAA told me to do, and based on all of that, here are my disclosures. And you believe the arbitrator, and you believe the oath, and you believe the process, and you review what the arbitrator gives you. But then why did you do an investigation after you lost? When I received that award, there were numerous things that caused me concern, and I submitted to — It was short, and it didn't contain — you lost, it was brief, and it didn't contain as much legal analysis as you expected. That's what I understood the issue to be as to why you — ostensibly why you conducted the investigation. Is that wrong? Well, we won on the counterclaims. We successfully defended against them. We did lose on our claims. But what jumped out at me and what caused me concern, Your Honor, and the district court made findings of fact to this effect, which were reviewed on a clearly erroneous standard before this Court, but there was no citation to the law or to the transcripts. The arbitrator asked us to prepare findings of fact to conclusions of law. We submitted 127 pages. American General submitted 102. The arbitrator said, to the extent I agree with you, I'm going to cut and paste from that significant amount of work. None of that was in the four pages. Well, let me ask, if I may, a slightly different question, but it's related to what Judge Hawkins asked you earlier. There were a number of potential conflicts or relationships that were disclosed initially, and then during the course of the arbitration, as the arbitrator learned new things, she disclosed those. You know, so-and-so, I hired them, and they played in the band, and we had this expert witness and so on. So there's a fairly large number of disclosures that were made. And don't we have to consider the undisclosed things in relation to that? In other words, to determine whether the nondisclosure is trivial, in the words of New Regency, don't we have a different situation where there are undisclosed things and you knew nothing versus undisclosed things and you already knew a lot? In other words, there's a continuum of triviality or importance, but don't we have to weigh it against what you already knew? The district court made a finding of fact in this case that nothing put us on. That's a legal question. It's not about a finding of fact. When we look at the legal standards supplied by New Regency, which is that this has to be real and non-trivial, is non-trivial viewed in isolation, or is it viewed against the things that were expressly disclosed earlier? What was disclosed made the relationship between the law firm and American General even-handed. So in some respects, the law firm had been adverse to American General Companies, but in other respects, the law firm had been the attorneys for American General Companies. So what we were told is that our law firm has been adverse to AGLA, but what we weren't told is that our law firm, AGLA, has also been a client, and AGLA was a party to the arbitration. We're expressly told our law firm has represented American Home Assurance, but then I find out there's 13 other companies that the law firm has represented that they didn't tell us about. And based on my research, American Home Assurance was one of the least significant. There was one law. There was one case. But National Union Fire, there were seven or eight cases. So when you look at what was disclosed and the district court agreed with us, it seemed even-handed. But when you actually add in what wasn't disclosed, the scales tip heavily in favor of American General. And then when you're in my position, you start to worry. You know, there's this longstanding relationship. One of the things that I could never have discovered through all of my research, and that came out only during the district court proceedings because American General volunteered it, is that as of 2012, Bradley, AIG would not allow Bradley to act counter to its interest. That's a finding of fact of the district court. So how am I in 2015, and that's not disclosed to me, how am I in 2015 to feel, not to worry or feel that this law firm would be unrestrained in considering a multimillion-dollar judgment against AIG and some of its subsidiaries and affiliates? Was there — you know, we're in the business of second-guessing. That's what — that's basically what we do. We look at a series of facts and proceedings, and we make judgments. Or we ask questions. And my question is this. Was there anything to prevent you from asking the arbiter, is there anything else? There is the worry that you will offend the neutral. And we cited a case to that effect in our brief. The arbitrator has — You strike me as a very experienced lawyer. You're really good on your feet. But you can couch that any way you want. We appreciate your disclosure. We know you want to be fair and neutral. But may I ask, is there anything else you care to disclose about your relationship or your firm's relationship, past or present, with AIG or any of its affiliates? If that had happened and she had said no, we would have a completely different case. We might have an actual bias case if that had happened. I'm not sure. But when you receive the oath and the arbitrator is saying to you, AAA requires all these things, I did them. And I have nothing else to disclose. And you believe the oath. You rest on the oath. And then there were other disclosures made that actually added comfort to us, like that her sister sold insurance for Prudential 15 years earlier, and Prudential is a totally unrelated insurance company to American General. But then we find out in that exact same time period that Bradley is representing AGLA and we weren't told about it. The Justice White in Commonwealth Codings in the concurrence, which has been given great weight, said that if an arbitrator is not willing to do the investigation that the arbitral body requires, then the arbitrator needs to let the parties know. And in this case, we were told, I have searched for direct and indirect. I have searched for the subsidiaries. I have searched for the parties themselves. I've searched for all time periods. And there's nothing else I have to disclose. And so you do risk offending the neutral who has their justices in your hand. And there's very limited ability to appeal from the decision that that person makes. So are you telling us that in these situations, there is no requirement on the part of a claimant to inquire further or more deeply into potential conflict? This Court in New Regency says no. Can you start with a yes or no? Is there such a duty or is there no such duty? There is not a duty placed on the parties unless the parties have some actual knowledge of something out there. Like in the Dergamont case that counsel was citing, one of the parties, it was a party-appointed neutral or party-appointed arbitrator. And the other side was on constructive notice that the party-appointed arbitrator had connections to the party who had appointed it. In Lagstein, this Court noted that the conflict, the undisclosed ethics controversy could have easily been discovered because it related to a Nevada Supreme Court case where the arbitrator's names are both in the Supreme Court case. So it's very easy to put their names in a Lexus, press enter, and that's going to pop up. It's lovely to see a lawyer not from the West pronounce the name of the State to the immediate eastern of California. It's Nevada. It often says Nevada. It's Nevada. So as I understand it, your answer is unless there's some red flag in the disclosure that's made, there is no duty to inquire. I believe that's the law of the Ninth Circuit. And I'm citing from New Regency, the burden to investigate is not on the parties. And I think the district court said it well, that we had the least amount of information than anyone. So when the AAA requires the checklist for conflicts, where every party is supposed to list all of their subsidiaries and related entities, the AAA treats that as confidential and we're not allowed to see it. We don't have access to the law firm's internal conflict system. We don't have access to their client list. The only way I was able to find this, and let's say you have some duty to do some searches. If you went on to Lexus, Westlaw, Pacer, any of the local subscription services that I use in my investigation, and you put in the names of AIG, AGLA, AGL, and you put the arbitrator's name, nothing will show up. If you put in the name of the law firm, nothing will show up because the law firm's names are not part of the search engines. The only way I was able to figure this out, because I was concerned, I was driven by concern, not because this was a wash, but because I had genuine concern. The only way I was able to figure this out was to start pulling lawsuits of each of these parties, lawsuits of their affiliates, lawsuits of their subsidiaries, and I would open the lawsuit and I would pull up the names of the attorneys, and then I would go over to the Bradley website and I would cross-check it against the Bradley website, and I did that. Excuse me, counsel. Does the complexity of that suggest that the more ordinary search that the arbitrator did would be considered facially reasonable? Because having looked at the conflict sheets, the Pacer, the Lexus, the Nexus, and all of that, and having no actual knowledge of any of these other things, you seem to be saying that an arbitrator has an obligation to do the extraordinary, and I'm just wondering where you draw that line of how intensive the arbitrator has to be when they've done what you describe as the ordinary search, and it turns out nothing. The arbitrator has a different way of searching. She has her internal conflicts check, and like you were asking, counsel. But apparently she did that. She did a check. She did not do what the AAA required her to do, which was to check for subsidiaries and affiliates. But even with the conflicts check that she did run, the fact that AGLA was a client was not disclosed. The other component of her deposition responses, she was asked, what does your firm require you to do, and what did you do in this case? Her firm requires to do the internal conflicts check, where she can just put the names in and then send a daily e-mail. And her response is she says she did do the conflicts check, and that her disclosures were based on that conflicts check. It doesn't say she sent an e-mail. I don't know if she sent the e-mail, but it's a lot easier. Would that have made any difference in your view? I mean, what would the e-mail have turned up? It would have made a difference because the arbitrators, the contact with the American general was Frederick Humbrick, who was in the arbitrator's office in her practice group. If the e-mail had been sent and it said, you know, do we have any conflicts with AIG, AGLA, any of their subsidiaries and affiliates, one would think that he would respond with saying, I've represented AGLA. I've also represented 14 of their subsidiaries. We tried to get a conflicts check and they wouldn't give it to us. We're named in insurance policies. We're the only Tennessee firm actually written into insurance policies as mandatory arbitrators. You need to disclose all of this before you take this representation on. You need to wind up. Thank you very much. Thank you. I appreciate your argument. Thank you. Counsel? I would like to address a couple of points that she made. Number one, I don't think it's accurate at all to say that the AAA required that the arbitrator search specifically for subsidiaries and affiliates. That appears nowhere in the notice of appointment that she had to fill out in the record, which is ER 140 through 143. It's not in the AAA code of ethics that they cite to. Rather, the only reference to that at all is in a separate document that is sent to each party where the AAA suggests that as a party filling out this, you know, you might want to include your affiliates and subsidiaries. That's not in the form that the arbitrator, that doesn't equate to an arbitrator having a duty to specifically search for subsidiaries and affiliates. Because the arbitrator didn't have that document, but the parties did? Well, because, no, specifically because. I guess I should ask, did the arbitrator have that document? Yes. Okay. And the parties also had that document? Correct. So then I assume, going back to the question Judge Hawkins asked opposing counsel, either side, including opposing counsel, could have further inquired with the arbitrator about the affiliates and subsidiaries. Absolutely. And to me it's significant to point out that when it comes to, you know, what ABN's duties would have been or what it would have required for them to do on the front end to get more information, this exhaustive Internet search, that's not necessary. She disclosed AIG is a former client of my firm. That could have meant they represent them in a thousand matters that ended the day before the disclosure. Or it could have been completely inconsistent. Or not inconsistent, insignificant. All they had to do was ask the arbitrator, can you elaborate on that? What do you mean? Can you give us more information about what that means as a former client? In fact, we asked for follow-up on the four cases that she disclosed where they were adverse to my client, Agla. Of course, we asked, well, tell us more about that. And she did. So that's really all that was involved there. It's really, it was really. Did the other side ask for any follow-up? Not at all. Didn't object. No objection whatsoever until after the fact. And so for them to sit here and say, essentially we are concerned with the scope of the relationship between this law firm and AIG and its affiliates and not ask a simple follow-up question to a disclosure that says AIG is a former client. I think it shows that they didn't really care about what that relationship was until after they got an award that was adverse to them. Now, the other point that I wanted to clarify is about the significance of the conflict waiver. As Ms. Hilton argued, she interpreted that as, well, it just shows that AIG wouldn't allow them to act contrary to their interests as late as 2012, but that misses the rest of the story. The rest of the story is they asked for that waiver because there was a series of conflicts between AIG and their corporate clients. And so in response to that, they made a business decision to sever their ties with AIG. So not only at the time of arbitration was there no current relationship, they had actually been adverse and were adverse at the time. So not only was there no reasonable impression of bias and there was no incentive on anyone's part in the law firm to do anything other than be completely neutral, because there's just no prospect to revive that based on the chronology. And that's ignored, and it's dispositive in this case. Your Honor, I see my time is up. We would ask that you reverse the district court's decision. Thank you very much. Well-argued case, well-briefed, very interesting issue, and the case just argued will be submitted for decision.
judges: Thacker, Hawkins, Graber